J-S14033-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RASHEEN RIVERS | : | |
| | : | |
| Appellant | : | No. 2015 EDA 2017 |

Appeal from the PCRA Order May 22, 2017
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0006706-2012

BEFORE:   OTT, J., McLAUGHLIN, J., and RANSOM*, J.

MEMORANDUM BY RANSOM, J.:                        **FILED APRIL 27, 2018**

Appellant, Rasheen Rivers, appeals from the order entered May 22, 2017, denying his first petition filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  We affirm.

In August 2012, following an undercover investigation, Appellant was arrested on numerous drug-related charges.  Notes of Testimony (N.T.), 1/10/13, at 113-32.  During his subsequent trial, Officer Kristine McAleer identified Appellant as the individual who sold her cocaine in July 2012 and who agreed to sell her cocaine in August 2012.  *Id.* at 113, 129-30.  Officer McAleer testified that during her interactions with Appellant she observed scars on his arms and hands.  *Id.* at 122.  Although she couldn't remember the clothes Appellant was wearing in July 2012, Officer McAleer commented that "[i]n Narcotics we try to focus more on the things that can't change, the

_____

*   Retired Senior Judge assigned to the Superior Court.

things that won't go away and he can't alter … the scars on his body were very identifiable." *Id.* at 140.

After mentioning that she was able to identify Appellant through his burn scars, the Commonwealth asked for a sidebar and made an oral motion for Appellant to roll up his sleeves. *Id.* at 141. Appellant's counsel objected to the relevance. *Id.* at 142. The trial court overruled Appellant's objection, concluding that Appellant's scarring was relevant to Officer McAleer's identification of Appellant, particularly after Appellant raised identification as an issue in his opening argument. *Id.* at 142, 144. Nevertheless, the trial court determined that photographic evidence would be more appropriate for practical and evidentiary reasons. *Id.* at 145-46.

The trial court called a recess for Appellant's arms to be photographed. *Id.* at 146. Thereafter, Officer McAleer was recalled to the stand to clarify that she could see Appellant's arms clearly on July 3, 2012. *Id.* at 151-52. The Commonwealth then introduced the photographs of Appellant's arms for identification purposes after both counsel stipulated to their authenticity.[1] *Id.* at 153-54. Officer McAleer then testified that the photographs represented how Appellant's arms appeared on July 3, 2012. *Id.* at 155. The photographs

---

[1] Counsel stipulated "for the purpose of authentication … that these photographs are fair and accurate depictions of how [Appellant's] arms appear today on January 10, 2013." N.T., 1/10/13, at 153.

were admitted into evidence and published to the jury without any further objection. *Id.* 155-56.

In January 2013, Appellant was convicted of possession with intent to deliver a controlled substance and criminal attempt to deliver a non-controlled substance.[2]  Thereafter, in March 2013, Appellant was sentenced to twenty-five to sixty months of incarceration followed by five years of reporting probation.

On appeal, this Court affirmed Appellant's judgment of sentence, and his petition for appeal to the Pennsylvania Supreme Court was denied.  *See* *Commonwealth v. Rivers*, 104 A.3d 65 (Pa. Super. 2014) (unpublished memorandum), *appeal denied*, 102 A.3d 985 (Pa. 2014).  Appellant did not petition for certiorari with the United States Supreme Court.

In September 2015, Appellant timely and *pro se* filed a PCRA petition, asserting that trial counsel was ineffective.  *See* Appellant's PCRA Pet. 9/23/15.  The PCRA court appointed counsel, who submitted an amended petition clarifying Appellant's assertion that counsel was ineffective for stipulating to the photographs of Appellant's arms.  *See* Appellant's Am. PCRA Pet., 1/12/17, at 1-2.  The PCRA court conducted an evidentiary hearing, at which Appellant claimed that trial counsel failed to give him any alternatives to having photographs taken of his arms.  N.T., 5/19/17, at 9.  Appellant testified that he did not know that photographs would be taken of his arms.

_____

[2] 35 Pa.C.S. §780-113(a)(30) and 18 Pa.C.S. § 901(a), respectively.

Nevertheless, he admitted that his trial counsel eventually informed him of the trial court's order for the photographs after they were taken. *Id.* at 27, 30. Appellant also indicated that, during the court recess, his counsel told him of his strategy to cross-examine Officer McAleer on her failure to mention any scarring in her reports. *Id.* at 32. He testified to not knowing that his trial counsel planned to agree to the photographs. *Id.* at 30. Appellant also asserted that he asked his counsel to object to the admission of the photographs. *Id.*

Trial counsel also testified at the hearing. According to counsel, prior to the hearing, he had formulated a strategy to argue mistaken identification:

> My strategy for defense as we went into trial was that the police only met him—the [Appellant] one time; that it was a rather quick interaction. And they sat on it for a few months. So I was going with mistaken identification; that they got the wrong guy.

*Id.* at 12.

Regarding the photographs, trial counsel acknowledged that Appellant did not want the photographs taken. *Id.* at 14. However, he explained to Appellant that the photographs were court-ordered. *Id.* at 14-15. According to counsel, he also explained to Appellant that the Commonwealth could either use the photographs of Appellant in court or request Appellant to display his arms before the jury. *Id.* at 14-15. Counsel believed that of the options, it was in Appellant's best interests to stipulate to the photographs. *Id.* at 17-18.

Following the hearing, the PCRA court dismissed Appellant's petition, concluding that Appellant failed to "overcome the presumption of his trial lawyer's competence." ***See*** Order, 5/22/17, at 7-8 n.3. Appellant timely appealed and filed a court-ordered Pa.R.A.P. 1925(b) statement. The PCRA court issued a responsive opinion.

On appeal, Appellant asks:

1. Was the trial court in error for denying [Appellant's] petition for Post-Conviction Relief as to whether trial counsel was ineffective for stipulating to photographs depicting scarring about [Appellant's] hands and arms without consulting with and obtaining [Appellant's] agreement as to the admission of said photographs?

***See*** Appellant's Brief at 8.

We review an order denying a petition under the PCRA to determine whether the findings of the PCRA court are supported by the evidence of record and free of legal error. ***Commonwealth v. Ragan***, 923 A.2d 1169, 1170 (Pa. 2007). We afford the court's findings deference unless there is no support for them in the certified record. ***Commonwealth v. Brown***, 48 A.3d 1275, 1277 (Pa. Super. 2012) (citing ***Commonwealth v. Anderson***, 995 A.2d 1184, 1189 (Pa. Super. 2010)).

On appeal, Appellant asserts ineffective assistance of counsel. According to Appellant, counsel erred when he failed to consult with Appellant prior to agreeing that the photographs could be taken of his arms. ***See*** Appellant's Brief at 8, 11. Moreover, according to Appellant, counsel also erred when, without Appellant's permission, counsel stipulated to the

authenticity of the photographs.[3] *Id.* Appellant concludes that counsel's failure to properly consult with him was unreasonable and prejudicial, as evidence of the scarring on his arms was "extremely detrimental" to Appellant's defense theory. *Id.* at 12.

In order to be eligible for relief, a petitioner must establish that his conviction resulted from the ineffectiveness of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543 (a)(2)(ii). We presume counsel is effective. *Commonwealth v. Cox*, 983 A.2d 666, 678 (2009). To overcome this presumption, a petitioner must establish that: (1) the claim has arguable merit; (2) counsel lacked a reasonable basis for his act or omission; and (3) petitioner suffered actual prejudice. *Commonwealth v. Treiber*, 121 A.3d 435, 445 (Pa. 2015). In order to establish prejudice, a petitioner must demonstrate "that there is a reasonable probability that, but for counsel's error or omission, the result of the proceeding would have been different." *Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012). A claim will be denied if the petitioner fails to meet any one of these prongs. *See Commonwealth v. Jarosz*, 152 A.3d 344, 350 (Pa. Super 2016) (citing *Commonwealth v. Daniels*, 963 A.2d 409, 419 (Pa. 2009).

---

[3] Appellant appears to conflate two issues: (1) counsel's stipulation to the authenticity of the photographs taken of Appellants arms on the day of trial and (2) the admission of the photographs as relevant evidence tending to corroborate the identification testimony of Officer McAleer. *See* Pa.R.E. 401, 403, and 901.

First, we will address whether Appellant's claim has arguable merit. Essentially, Appellant asserts that counsel failed to properly consult with him and advise him of developments related to his defense strategy. *See* Appellant's Brief at 12 (citing in support *Commonwealth v. Mason*, 130 A.3d 601, 668 (Pa. 2015)).

Our Pennsylvania Supreme Court has long recognized a narrow list of important decisions, in the context of a criminal proceeding, that require counsel to consult with and obtain consent from his or her client:

> An attorney undoubtedly has a duty to consult with the client regarding "important decisions," including questions of overarching defense strategy. *Strickland,* 466 U.S., at 688, 104 S.Ct. 2052. That obligation, however, does not require counsel to obtain the defendant's consent to "every tactical decision." But certain decisions regarding the exercise or waiver of basic trial rights are of such moment that they cannot be made for the defendant by a surrogate. A defendant, this Court affirmed, has "the ultimate authority" to determine "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." Concerning those decisions, an attorney must both consult with the defendant and obtain consent to the recommended course of action.

*Commonwealth v. Mason*, 130 A.3d 601, 667 (Pa. 2015) (citing to *Florida v. Nixon,* 125 S.Ct. 551, 560 (2004)) (internal citations omitted).

This precedent aligns with our Pennsylvania Rules of Professional Conduct, which recognize "a *duty to gain the consent* of a defendant regarding the overarching objective or purpose of a defense," while leaving with "counsel the authority to control the many aspects involving strategy and tactics in achieving those objectives." *See Mason*, 130 A.3d at 668 (citing

*Commonwealth v. Sam*, 635 A.2d 603, 611-12 (Pa. 1993) (relying on Pa.R.P.C 1.2, which provides that a "lawyer shall abide by a client's decisions concerning the objectives of representation").

In the instant case, the record does not support Appellant's assertion that counsel failed to advise him of developments relating to his defense strategy. Counsel did not dispute Appellant's assertions that he did not inform Appellant in advance that photographs would be taken of his arms during a trial recess. However, before trial resumed, counsel explained that the pictures were court-ordered, that the pictures were the better option, and that counsel intended to impeach Officer McAleer with her failure to document her observations of Appellant's scarring.

Regarding Appellant's argument that his prior consent was required, we disagree. After the court overruled counsel's objections, evidence of Appellant's scarring was deemed admissible. Appellant had no fundamental decision to make. Rather, Appellant was left with a mere tactical decision well within counsel's purview. *Mason*, 130 A.3d at 667-68.

For these reasons, we conclude that Appellant's claim lacks arguable merit. *Id.* The lack of arguable merit is enough to deny Appellant's petition. *Jarosz*, 152 A.3d at 350. Nevertheless, we will briefly address the remaining prongs of the ineffectiveness analysis. *Id.*

Next, Appellant argues that counsel's tactical decision was unreasonable. Appellant's Brief at 8. Appellant baldy asserts that since the

trial court's decision so undermined counsel's trial strategy, he should have requested a continuance. *See* Appellant's Brief at 11.

When determining whether counsel's performance lacked a reasonable basis, this Court considers that:

> "… counsel's assistance is deemed constitutionally effective if he chose a particular course that had some reasonable basis designed to effectuate his client's interests." Courts should not deem counsel's strategy or tactic unreasonable "unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." Also "[a]s a general rule, a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion…. The ultimate focus of an ineffectiveness inquiry is always upon counsel, and not upon an alleged deficiency in the abstract."

*Commonwealth v. Koehler*, 36 A.3d 121, 132 (Pa. 2012) (internal citations omitted).

Appellant has offered no support for his suggestion that counsel should have requested a continuance and, thus, risks waiver. *See* Pa.R.A.P. 2119(a); *Wirth v. Commonwealth*, 95 A.3d 822, 837 (Pa. 2014) (stating, "where an appellant brief fails to … develop an issue in any other meaningful fashion capable of review, that claim is waived. It is not the obligation of the appellate court to formulate [the] appellant's argument for him.").

Nevertheless, we find Appellant's suggestion unpersuasive. Counsel made a reasonable decision based on the limited options available to him, as was made clear in the following testimony:

> I believe we got to the point where the Judge had ordered that either it's going to be an in -person exhibition of his arms or the

> pictures. I thought it would be better for my client to have it be pictures rather than have him being forced possibly by Sheriffs to remove his shirt. I thought that would be more humiliating or -- I didn't like the fact of him being forced to do something in open Court, I thought the pictures would be, you know, more sanitary, not something that was forced to happen in front of the jury.

*See* N.T., 5/19/17, at 18.

Clearly, counsel's decision was taken in Appellant's interest, intended to give Appellant a more dignified appearance in court and not subject him to the humiliation of disrobing in front of a room full of strangers. Further, Appellant has failed to explain how his suggested course of action - requesting a continuance - would produce a more successful outcome. In the end, a continuance would merely have postponed a decision on the limited options available to Appellant. Thus, Appellant has failed to prove that counsel's actions lacked a reasonable basis. *Koehler*, 36 A.3d at 132.

Finally, we recognize Appellant's assertion that the photographs were "extremely detrimental" to counsel's mistaken identification defense, thus implying he suffered prejudice. Appellant's Brief at 11-12. Undoubtedly, the testimony of Officer McAleer, corroborated by the photographs, provided compelling evidence of Appellant's guilt. However, the strength of this evidence was not the result of any error by counsel. Therefore, Appellant cannot establish prejudice. *See Koehler*, 36 A.3d at 132 (defining prejudice in terms of "counsel's error or omission").

As Appellant has not satisfied any of the prongs for ineffectiveness of counsel, the PCRA court did not err in denying Appellant's PCRA petition. *Treiber*, 121 A.3d at 445.  Accordingly, no relief is due.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/18

- 11 -